# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| DAVID DRESSLER, individually and on behalf of similarly situated individuals, ) ) ) ) Plaintiff, ) ) v. ) ) KANSAS COPTERS AND WINGS, INC., ) et al., ) ) Defendants. ) | **CIVIL ACTION** No. 09-1016-MLB |

## MEMORANDUM DECISION

**I.   INTRODUCTION**

This is an action under the Fair Labor Standards Act (FLSA) and Kansas Wage Payment Act to recover overtime pay and withholdings. Plaintiff contends that he is due overtime pay for approximately 56 hours worked. Plaintiff also seeks compensatory damages in the amount of $625 to compensate for the amount withheld by defendants from plaintiff's final check. Defendants contend that plaintiff's position was exempt from the FLSA and that plaintiff agreed to have his wages withheld if certain conditions of employment were not met.

The case was tried to the court, and this decision represents the court's findings of fact and conclusions of law as required by Fed. R. Civ. P. 52.

**II. FINDINGS OF FACT**

Plaintiff David Dressler is a certified A & P mechanic. After graduating from high school, plaintiff joined the United States Marine

Corps. For five years, plaintiff worked as an aviation hydraulics mechanic in the Marines. Plaintiff then worked several years as a dental assistant. In January 2005, plaintiff enrolled in the Aviation Institute of Maintenance. Plaintiff obtained his A & P certification in August 2006. Plaintiff was then employed by Midwest Corporate Aviation and Wells Aircraft. On March 15, 2008, plaintiff applied for a position with Kansas Copters & Wings, Inc.

Kansas Copters is a factory authorized dealer and service center for the Robinson R22 helicopter. The president of the company, defendant Earl Schreiber, decided to offer plaintiff a position because of plaintiff's experience with helicopters in the military and his education. On March 21, plaintiff signed an employment agreement with Kansas Copters. Plaintiff additionally signed a non-compete agreement in which he agreed to not accept employment for any company that offers the same services as defendants.

The employment agreement states in pertinent part:

> Your primary function would be to work as an A & P mechanic. All of our employees are responsible for facility maintenance and janitorial duties. . . . You may be required to work on your days off and/or holidays from time to time. You will be required to travel and attend courses as needed by the company.
>
> ***
>
> Should you terminate your employment we require a thirty (30) day advance notice. Any notice of less than thirty (30) days and/or employment of less than three years would require for you to reimburse the company(s) any funds spent on your training, attending courses, and any other expenses. . .
>
> As such, the starting salary for this overtime exempt position considering your qualifications is $600.00 per week. . . Compensatory time is earned hour for hour for every hour in excess of Sixty (60) hours per work week. . . . The company(s) reserve the right to withhold

> compensatory time and/or regular pay, and/or vacation time and/or holiday pay in the amount equal to what the company(s) have paid for aforementioned training and expenses, etc., until you have served at least three (3) years continued employment.

(Exh. 402).

Earl Schreiber drafted the employment agreement after consulting with his attorney. Schreiber determined that an A & P mechanic at his company would be exempt from the overtime provisions in the FLSA due to the specialized training and unique services offered by defendants. In making his determination, Schreiber researched the issue of overtime by reviewing brochures from the federal government and browsing the internet. Schreiber also contacted other businesses which contracted with Robinson aircraft. Schreiber learned that these businesses also paid their mechanics a weekly rate. Schreiber therefore determined that the position of an A & P mechanic would be exempt from overtime.

Plaintiff's work at Kansas Copters was supervised by Laurence Schreiber, who was also an A & P mechanic. Plaintiff was required to perform routine maintenance on Robinson helicopters. Plaintiff was also required to diagnose issues that arose with Kansas Copters' customers' aircraft for non-scheduled maintenance. Plaintiff would adjust flight control surfaces, make repairs and adjustments to the engine, and replace parts. Plaintiff would then certify whether the aircraft was safe for flight. In addressing and diagnosing problems, plaintiff would review the flight history and utilize the manuals that were specific to the aircraft. Plaintiff did not deviate from the manuals. Plaintiff did not modify the flight systems and he was not hired to design modifications to the aircraft.

-3-

In addition to making repairs at the airport in Augusta, plaintiff was also expected to service Robinson helicopters at other locations. On one occasion during his employment, plaintiff traveled to Nebraska to make repairs on a Robinson helicopter. Plaintiff was also required to perform maintenance on the facility. Plaintiff would clean the floors, paint the hangar and pull weeds. All employees at Kansas Copters were required to assist in the upkeep of the facility. Plaintiff was required to do this type of work when he was not working on a helicopter.

Plaintiff's work schedule initially required him to work from 8 a.m. to 5 p.m., Monday through Friday. Plaintiff then attended the Robinson Training Course in California during the week of May 11. After returning from the course, plaintiff was certified to work on Robinson helicopters. Plaintiff then began working on Saturdays for eight hours in addition to his regular forty-hour work week. Plaintiff's compensation rose to $625 a week due after successful completion of the training course.

Plaintiff's last day of employment with Kansas Copters was August 20, 2008. Instead of issuing plaintiff his final check in the amount of $625, Kansas Copters withheld plaintiff's pay for reimbursement for the Robinson course.

### III. ANALYSIS AND CONCLUSIONS OF LAW

#### A. FLSA

#### 1. Professional Exemption

Under the FLSA, an employer must pay an employee overtime compensation at one and one-half the employee's regular rate of pay for all hours worked by the employee in a given week in excess of

forty hours. 29 U.S.C. § 207(a)(1). Notably, the FLSA exempts from its overtime compensation requirements "any employee employed in a bona fide executive, administrative, or professional capacity." 29 U.S.C. § 213(a)(1). Defendants contend that plaintiff's position is exempt under the FLSA because he is employed in a bona fide professional capacity. It is defendants' burden to prove that plaintiff falls within the professional exemption and the inquiry is "intensely fact bound and case specific." Bohn v. Park City Group, Inc., 94 F.3d 1457, 1461 (10th Cir. 1996). And because the FLSA is a remedial statute, this exemption must be "narrowly construed." A.H. Phillips, Inc. v. Walling, 324 U.S. 490, 493, 65 S. Ct. 807, 89 L. Ed. 1095 (1945).

> To qualify for the learned professional exemption, an employee's primary duty must be the performance of work requiring advanced knowledge in a field of science or learning customarily acquired by a prolonged course of specialized intellectual instruction. This primary duty test includes three elements:
>
> (1) The employee must perform work requiring advanced knowledge;
>
> (2) The advanced knowledge must be in a field of science or learning; and
>
> (3) The advanced knowledge must be customarily acquired by a prolonged course of specialized intellectual instruction.

29 C.F.R. § 541.301(a).

First, in determining whether the initial element is met, the court is guided by the definition set forth in the regulations:

> The phrase "work requiring advanced knowledge" means work which is predominantly intellectual in character, and which includes work requiring the consistent exercise of discretion and judgment, as distinguished from performance of routine mental, manual, mechanical or physical work. An employee who performs work requiring advanced knowledge generally uses the advanced knowledge to analyze, interpret

or make deductions from varying facts or circumstances.
Advanced knowledge cannot be attained at the high school
level.

29 C.F.R. § 541.301(b).

The testimony in this case established that plaintiff performed his position as an A & P mechanic in strict compliance with guidelines set forth by the manufacturer. Plaintiff could not deviate from the design of the helicopter or make any modifications without specific input from the manufacturer. Plaintiff's work was routine and he worked on the same type of aircraft. The court finds that plaintiff's work was not predominantly intellectual in character. Plaintiff's work was routine mechanical work and therefore does not qualify for the learned professional exemption.

Even if the court were to find that the first element was met, the final two elements have not been proven. The second element is as follows:

The phrase "field of science or learning" includes the
traditional professions of law, medicine, theology,
accounting, actuarial computation, engineering,
architecture, teaching, various types of physical, chemical
and biological sciences, pharmacy and other similar
occupations that have a recognized professional status as
distinguished from the mechanical arts or skilled trades
where in some instances the knowledge is of a fairly
advanced type, but is not in a field of science or
learning.

29 C.F.R. § 541.301(c).

Clearly, an aircraft mechanic does not fall into the traditional professions listed in the regulation. Defendants cite <u>Paul v. Petroleum Equip. Tools Co.</u>, 708 F.2d 168 (5th Cir. 1983) to support the position that pilots have been found to qualify for the professional employee exemption. In <u>Paul</u>, the court determined that

flying is a field of science or learning because the pilot "must acquire extensive knowledge of aerodynamics, airplane regulations, airplane operations, instrument procedures, aeronautical charts, and weather forecasting." 708 F.2d at 173. Plaintiff, however, is not a pilot. Plaintiff's knowledge is not similar to what is required of a pilot. Plaintiff's learning is of a mechanical nature and that is excluded by the regulation.

The final element has also not been met. The regulations explain the element as follows:

> The phrase "customarily acquired by a prolonged course of specialized intellectual instruction" restricts the exemption to professions where specialized academic training is a standard prerequisite for entrance into the profession. The best prima facie evidence that an employee meets this requirement is possession of the appropriate academic degree. However, the word "customarily" means that the exemption is also available to employees in such professions who have substantially the same knowledge level and perform substantially the same work as the degreed employees, but who attained the advanced knowledge through a combination of work experience and intellectual instruction. Thus, for example, the learned professional exemption is available to the occasional lawyer who has not gone to law school, or the occasional chemist who is not the possessor of a degree in chemistry. However, the learned professional exemption is not available for occupations that customarily may be performed with only the general knowledge acquired by an academic degree in any field, with knowledge acquired through an apprenticeship, or with training in the performance of routine mental, manual, mechanical or physical processes. The learned professional exemption also does not apply to occupations in which most employees have acquired their skill by experience rather than by advanced specialized intellectual instruction.

29 C.F.R. § 541.301(d).

While plaintiff clearly gained his education from technical school and Marine Corps experience, advanced education is not required in order to gain FAA certification. Plaintiff's short course of

training with the manufacturer of Robinson helicopters does not amount to a prolonged course of specialized intellectual instruction. Defendants have again cited cases which deal only with pilots. Plaintiff is not a pilot. The language in the regulation contemplates that some individuals may qualify for the exemption without formal education but then cites rare examples of occupations which routinely required advanced education. The examples cited are clearly those professions which are highly intellectual in nature and not mechanical, like that of an A & P mechanic.

The court finds that plaintiff's position as an A & P mechanic is not exempt under § 213(a)(1) because he does not qualify as a professional.

**2. Irregular Hours**

Next, defendants argue that plaintiff is exempt under section 207(f). To be exempt under section 207(f), plaintiff's employment contract must meet the following requirements: "(1) the agreement must be made 'pursuant to a bona fide individual contract' . . .; (2) the duties of the employee must 'necessitate irregular hours of work'; (3) the contract must specify a 'regular rate of pay' for the first forty hours and 'compensation at not less than one and one-half times such rate' for all hours above forty; and (4) it must provide a 'weekly guarantee of pay for not more than sixty hours.'" Donovan v. Tierra Vista, Inc., 796 F.2d 1259, 1260 (10th Cir. 1986).

The second and third elements have not been met here. The evidence is that plaintiff worked a minimum of forty hours every week unless he took off for personal time. Plaintiff also routinely worked from 8 to 5. The exemption under section 207(f) was created for

individuals whose work weeks would fluctuate from week to week and would be harmed by a varying paycheck. Donovan, 796 F.2d at 1260. Also, the third element is not met because the contract does not specify a rate of pay for the first forty hours and the rate for the hours worked in excess of forty. Therefore, the exemption under section 207(f) does not apply.

Because neither exception offered by defendants applies to plaintiff's position, defendants were required to pay overtime as required under the FLSA.

### 3. Actual Damages

In order to determine the amount of overtime owed, the court must consider the amount of hours worked by plaintiff. The term "work" is not defined in the FLSA, but it is settled that duties performed by an employee before and after scheduled hours, even if not requested, must be compensated if the employer "knows or has reason to believe" the employee is continuing to work, 29 C.F.R. § 785.11, and the duties are an "integral and indispensable part" of the employee's principal work activity. Steiner v. Mitchell, 350 U.S. 247, 256, 76 S. Ct. 330, 100 L. Ed. 267 (1956); 29 C.F.R. §§ 785.24 and 785.25.

In estimating the amount of time worked, plaintiff relied on his memory of the days he worked while employed by defendants. Plaintiff testified that he worked every Saturday, for a total of seven, with the exception of two holiday weekends and two Saturdays in which he took personal leave. Defendants attempted to controvert plaintiff's testimony by stating that there were occasions where plaintiff was able to leave early and take sick leave. Defendants, however, did not maintain records of plaintiff's hours worked. "The employer cannot

be heard to complain that the damages lack the exactness and precision of measurement that would be possible had he kept records in accordance with the requirements of [29 U.S.C. § 211(c)]." <u>Anderson v. Mt. Clemens Pottery Co.</u>, 328 U.S. 680, 687-88, 66 S.Ct. 1187, 90 L. Ed. 1515 (1946); <u>Metzler v. IBP, Inc.</u>, 127 F.3d 959, 965-66 (10th Cir. 1997).

"When the employer has failed to record compensable time and the employees have proved that they actually performed the work in question, the plaintiffs need only produce evidence sufficient to support a reasonable inference of the amount and extent of that work." <u>Metzler</u>, 127 F.3d at 965 (citing <u>Mt. Clemens</u>, 328 U.S. at 687, 66 S.Ct. at 1192). "The burden then shifts to the employer to come forward with evidence of the precise amount of work performed or with evidence to negative the reasonableness of the inference to be drawn from the employee's evidence." <u>Id.</u> at 965-66 (quoting <u>Mt. Clemens</u>, 328 U.S. at 687-88, 66 S.Ct. at 1192-93).

Because defendants have not come forward with evidence of plaintiff's hours worked, the court finds that plaintiff is owed overtime for a total of 56 hours. The court must now determine plaintiff's hourly rate of pay. Compensation for overtime is "a rate not less than one and one-half times the regular rate at which [the employee] is employed." 29 U.S.C.A. § 207(a)(2). The DOL regulations explain that, for a salaried employee, the "regular hourly rate of pay, on which time and a half must be paid, is computed by dividing the [weekly] salary by the number of hours [per week] which the salary is intended to compensate." 29 C.F.R. § 778.113. The example set forth in the regulation is as follows:

> If an employee is hired at a salary of $182.70 and if it is understood that this salary is compensation for a regular workweek of 35 hours, the employees regular rate of pay is $182.80 divided by 35 hours, or $5.22 an hour, and when he works overtime he is entitled to receive $5.22 for each of the first 40 hours and $7.83 (one and one-half times $5.22) for each hour thereafter.

29 C.F.R. § 778.113.

The court therefore must first ascertain the number of hours plaintiff's salary was intended to compensate. Plaintiff asserts that his salary was intended to compensate 48 hours of work. Defendants, however, contend that the salary was intended to compensate 60 hours of work based on the language of the contract. The contract does not specify that plaintiff must work a specific number of hours. Instead it mentions hours only for determining compensatory hours, i.e. hours in excess of 60 hours per week. This does not equate to an understanding that plaintiff's salary was intended to compensate plaintiff for 60 hours of work. Plaintiff's testimony was that he understood the amount of compensation was for a minimum work week of 40 hours and a maximum work week of 60 hours. In fact, in plaintiff's initial two months he did not work more than 40 hours in a week. After plaintiff returned from training, he worked four weeks at 40 hours a week and seven weeks at 48 hours a week. Therefore, the court finds that section 778.113 does not apply in this case.

When an employee has agreed to varying hours in a work week, the court must use the fluctuating work week method set forth at 29 C.F.R. § 778.114. "By its own terms, § 778.114 applies only if there is a clear mutual understanding of the parties that the fixed salary is compensation for however many hours the employee may work in a particular week, rather than for a fixed number of hours per week."

-11-

Clements v. Serco, Inc., 530 F.3d 1224, 1230 (10th Cir. 2008). Under this kind of compensation structure, the salary "is intended to compensate the employee at straight time rates for whatever hours are worked in the workweek." To determine the amount of plaintiff's hourly wage, the court is to divide his weekly salary by the number of hours worked. § 778.114. The court then is to multiply that number by 50% to determine the amount of overtime due. Id.

Plaintiff's salary during the weeks he worked 48 hours was $625. Plaintiff's hourly rate was $13.02. The additional half time owed to plaintiff is $6.51 an hour. Therefore, the total overtime owed plaintiff is $364.56, which is 56 hours times $6.51.

**4. Liquidated Damages**

In addition to actual damages, plaintiff also seeks liquidated damages. The FLSA provides that an employer who violates the Act by failing to pay compensable wages is ordinarily liable for the unpaid wages and "an additional equal amount as liquidated damages." 29 U.S.C. § 216(b). However, the court may eliminate or reduce the award "only if the employer demonstrates both that he acted in good faith and that he had reasonable grounds for believing that his actions did not violate the Act. The good faith requirement mandates the employer have an honest intention to ascertain and follow the dictates of the Act. The additional requirement that the employer have reasonable grounds for believing that his conduct complies with the Act imposes an objective standard by which to judge the employer's behavior." Dept. of Labor v. City of Sapulpa, Okl., 30 F.3d 1285, 1289 (10th Cir. 1994)(internal citations omitted).

Schreiber testified that he sought advice from his attorney,

reviewed documents from the federal government, investigated the matter on the internet and discussed overtime pay with other small business owners who contracted with Robinson. Plaintiff's only attempt to contradict Schreiber's actions was to state that he believed his own internet research was correct and Schreiber's research was not.

The court finds that Schreiber took appropriate measures for a small business owner. The court further finds that Schreiber acted in good faith and did have reasonable grounds for believing that the position was exempt. Therefore, plaintiff's claim for liquidated damages is denied.

### B. KWPA Claim

Finally, plaintiff claims that defendants violated KSA 44-319 by withholding his wages in order to recover monies paid for plaintiff's training.

KSA 44-319 states as follows:

> No employer may withhold, deduct or divert any portion of an employee's wages unless: (1) The employer is required or empowered to do so by state or federal law; (2) the deductions are for medical, surgical or hospital care or service, without financial benefit to the employer, and are openly, clearly and in due course recorded in the employer's books; (3) the employer has a signed authorization by the employee for deductions for a lawful purpose accruing to the benefit of the employee; or (4) the deductions are for contributions attributable to automatic enrollment, as defined in K.S.A. 44-319a . . .

Defendants argue that the third exception applies and point to the language in the employment contract which states that "The company(s) reserve the right to withhold compensatory time and/or regular pay, and/or vacation time and/or holiday pay in the amount equal to what the company(s) have paid for aforementioned training and

-13-

expenses, etc., until you have served at least three (3) years continued employment." (Exh. 402).

Defendants assert that the training was a lawful deduction because it had a lawful purpose of accruing a benefit to plaintiff. However, the regulations defining authorized deductions do not include training.[1] The regulations further state that any deductions not set forth in the rules or regulations are not authorized deductions "accruing to the benefit of the employee." K.A.R. 49-20-1(2). Therefore, defendants' withholding does not meet the exception in KSA 44-319.

---

[1] Authorized deductions accruing to the benefit of the employee has been defined in K.A.R. 49-20-1(a)(1) as follows:
(1) Authorized deductions shall include:
(A) Contributions to and recovery of overpayments under employee welfare and pension plans;
(B) contributions made under a collective bargaining agreement to employee welfare and pension plans that are not subject to the federal welfare and pension plans disclosure act. Such plans include, but are not limited to, group insurance plans, hospitalization insurance, life insurance plans approved by the Kansas commissioner of insurance, group hospitalization and medical service programs offered by nonprofit hospitalization and medical service organizations, and group medical insurance plans;
(C) deductions authorized in writing by employees or deduction by employers under a collective bargaining agreement for payments into:
(i) Company-operated thrift plans; or
(ii) stock option or stock purchase plans to buy securities of the employing or an affiliated corporation at market price or less, provided such securities are listed on a stock exchange or are marketable over the counter;
(D) deductions by employers for payment into employee personal savings accounts. Such payments include, but are not limited to, payments into credit unions, savings fund societies, savings and loan associations, building and loan associations, savings departments of banks for Christmas, vacations or other purposes, and payments for United States government bonds;
(E) contributions by the employee for charitable purposes;
(F) contributions to labor organizations for purposes of dues, assessments, initiation fees and other charges; and
(G) the actual cost to the employer of meals and lodging obtained from the employer, if the cost is not wages earned.

-14-

Alternatively, defendants contend that the requirement that plaintiff be employed by KC&W for three years prior to receiving wages equal to the cost of his training was a condition precedent to the payment of wages. (Doc. 58 at 8). "Kansas law permits an employer to impose a condition precedent on its obligation to pay an employee for a benefit; however, once an employee's right to a benefit becomes absolute, a condition subsequent cannot impose a forfeiture." Weir v. Anaconda Co., 773 F.2d 1073, 1084 (10th Cir. 1985). "A forfeiture that is imposed as a condition precedent-requiring that an employee give up a wage already earned-is valid. . . . On the other hand, a forfeiture that is imposed as a condition subsequent-imposing the condition after the wage was already earned-is invalid." Kephart v. Data Systems Intern., Inc., 243 F. Supp.2d 1205, 1230 (D. Kan. 2003).

Under Kansas law, a condition precedent is:

> something that is agreed must happen or be performed before a right can occur to enforce the main contract. It is one without the performance of which the contract entered into between the parties cannot be enforced. A condition precedent requires the performance of some act or happening of some event after the terms of the contract, including the condition precedent, have been agreed on before the contract shall take effect.

Weinzirl v. Wells Group, Inc., 234 Kan. 1016, 1019, 677 P.2d 1004, 1008 (1984).

"[A]n employment contract may create a condition precedent to the employee's earning of wages." Sastre v. Cessna Aircraft Co., No. 98-3330, 1999 WL 1244488, *2 (10th Cir. Dec. 21, 1999). The condition on plaintiff's earning his wages had not occurred at the time plaintiff was to receive his final paycheck. The condition was also in place prior to the earning of plaintiff's wages and, therefore, was

-15-

not a condition subsequent. Moreover, plaintiff testified that he read and understood the implication of the contract when he signed the agreement. The court finds that the condition in the employment contract was a valid condition under Kansas law. Because plaintiff admittedly did not meed that condition prior to receiving his final check defendants did not violate Kansas law by withholding his wages.

Therefore, the court grants judgment to defendants on plaintiff's KWPA claim.

### C. Attorney's Fees

Plaintiff also seeks an award of attorney's fees. Attorney's fees are recoverable in suits under the FLSA. See 29 U.S.C. § 216(b). Plaintiff's counsel must file his attorney's fees calculations by August 23, 2010. Defendants must file an objection, if any, by August 30. If an objection is filed, the court will schedule a hearing to determine the reasonable attorney's fees.

## IV. CONCLUSION

The court finds that defendants are liable to plaintiff for a total of $364.56 in compensatory damages. Defendants are also liable for reasonable attorney's fees.

IT IS SO ORDERED.

Dated this ___10th___ day of August 2010, at Wichita, Kansas.

s/ Monti Belot<br>
Monti L. Belot<br>
UNITED STATES DISTRICT JUDGE